**William C. JOHNSON, Plaintiff,**

v.

**WESTINGHOUSE ELECTRIC CORP., a Pennsylvania Corporation, d/b/a Western Zirconium, a Delaware Corporation, Defendant.**

No. 89–NC–021A.

United States District Court,
D.Utah, N.D.

Dec. 28, 1990.

Danny Quintana, Suzanne Dallimore, Salt Lake City, Utah, for plaintiff.

Elizabeth T. Dunning, Steven E. McCowin of Watkiss & Saperstein, Salt Lake City, Utah, for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

## I. INTRODUCTION

The plaintiff, William Johnson, brought this action against the defendant, Western Zirconium, pursuant to Title VII of the Civil Rights Act of 1964, alleging his termination by Western Zirconium in March 1988 was motivated by racial bias. The defendant has moved for summary judgment, claiming that plaintiff has failed to establish a prima facie case of employment discrimination. Defendant further claims that even if plaintiff has established a prima facie case, he was terminated for a legitimate, non-discriminatory, non-pretextual reason. The court heard oral argument on defendant's motion on December 13, 1990, and took the matter under advisement. Having advised itself of the law and the facts in this case, the court is now prepared to rule.

## II. FACTUAL BACKGROUND

Plaintiff was employed by defendant, Western Zirconium, on May 21, 1984, as a utility operator in the Chlorination Department and was later promoted to a fabrication operator in the Extrusion Department and other areas of Western Zirconium. Western Zirconium is in the business of manufacturing Zirconium products including Zirconium rods for use in nuclear power plants. Plaintiff's responsibilities included running furnaces, cutting excessive portions of the work in progress, operating an electron beam welder, weighing and measuring the work in progress, and recording the weights and sizes of the product on travelers which accompanied the product throughout production.

Western Zirconium claims that the plaintiff was terminated because he was either unable or unwilling to perform his job responsibilities without committing an excessive number of errors. In support of this contention, Western Zirconium points to a well-documented history of performance problems. This performance history reveals numerous verbal and written reprimands for performance errors committed by the plaintiff. Western Zirconium further contends that Mr. Johnson continually violated its "verbatim compliance" policy and that his errors delayed the fabrication process and caused additional work for other employees. Additionally, Western Zirconium claims that pursuant to its progressive disciplinary policy, Mr. Johnson was not terminated until after he made several performance errors while on final written notice and after a final evaluation by Western Zirconium's management.

In his defense, plaintiff contends that he did not commit any more errors than any other Western Zirconium employee, but that his supervisor, Jerry Ward, was racially biased and therefore documented Johnson's errors, while overlooking the errors of other employees. Mr. Johnson claims that this disparate treatment created a substantial poor performance record against him, which ultimately led to his termination.

## III. ANALYSIS

Summary judgment is appropiate only when the record shows "that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The moving party has the initial burden to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). For the purposes of examining a motion for summary judgment, the evidence presented must be viewed in the light most favorable to the party opposing the motion. *Brown v. Parker–Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir.1984).

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there is a genuine issue of material fact. The non-moving party "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Moreover, summary judgment is mandated if "after adequate time for discovery and upon motion, ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. However, "[w]here different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment." *Brown v. Parker–Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir.1984). "The fact that on full consideration at trial the movant might be more likely to prevail is no reason to grant summary judgment; it is not within the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value or decide factual issues." *Bocage v. Litton Systems, Inc.*, 702 F.Supp. 846, 849 (D.Utah 1988) *citing Brown*, 746 F.2d at 1411–12.

## A. *The Burden of Proof Under Title VII for Wrongful Discharge*

The initial burden in a cause of action for employment discrimination falls on the employee to establish a prima facie showing of discrimination. *Bocage v. Litton Systems, Inc.*, 702 F.Supp. 846, 849 (1988) *citing Bowen v. Valley Camp of Utah, Inc.*, 639 F.Supp. 1199, 1201–02 (D.Utah 1986) (*explaining McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once the plaintiff has made a prima facie showing of discrimination, the burden of production shifts to the employer to establish a legitimate, non-discriminatory reason for terminating the employee. *Id.* at 850. If the employer succeeds in articulating a non-discriminatory reason for terminating the employee, the burden of production shifts back to the employee to show that the alleged non-discriminatory reasons given by the employer were mere pretexts for discrimination. *Id.* citing *Nulf v. International Paper Co.*, 656 F.2d 553, 558 (10th Cir.1981). Although the burden of production logically shifts between the parties in an employment discrimination case, the burden of persuasion remains with the plaintiff throughout the case. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

## B. *The Prima Facie Case*

 To establish a prima facie case of discrimination under Title VII, the plaintiff must show that: (1) he belongs to a protected group; (2) he was qualified for his job; (3) he was terminated despite his qualifications; and (4) after his termination, the employer hired someone or sought applicants for the plaintiff's vacated position, whose qualifications were no better than the plaintiff's. *McDonnell Douglas v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824. *See Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1129, 1135 (10th Cir.1983). "[A] discharged employee establishes a *prima facie* case by satisfying the first three requirements ... and by producing evidence that someone was hired in his place after he was fired." *Brown v. Parker–Hannifin Corp.*, 746 F.2d at 1409–1410, *citing Crawford v. Northeastern Oklahoma State University*, 713 F.2d 586, 588 (10th Cir.1983).

In the present case, the defendant does not dispute that the plaintiff belongs to a group protected by Title VII or that someone was hired in his place. The defendant claims, however, that the plaintiff has failed to show either (1) that he was qualified for his job, or (2) that he was discharged despite his qualifications. Because there is no dispute that the plaintiff was terminated from his employment, the second of these elements is satisfied after the plaintiff establishes that he was qualified for his job. Thus, although the above elements are stated separately, the only issue remaining is whether the plaintiff has proffered evidence to support an inference that he was qualified for his job.

█ As this court noted in *Bocage*, "[i]n the employment context, qualification is more than education credentials and experience; it also requires competence to perform the required job duties." *Bocage*, 702 F.Supp. at 850. Western Zirconium claims the plaintiff cannot possibly show that he was qualified for his job because the record evidence shows that he was unqualified, in that he was either unable or unwilling to perform his job responsibilities without committing an excessive number of errors. In support of this contention, Western Zirconium points to the record of Johnson's performance errors, which contains a long list of verbal and written reprimands. Western Zirconium further notes that Johnson has admitted to committing these performance errors. Memorandum In Opposition To Defendants' Motion for Summary Judgment, ¶¶ 47, 51, 52, 58, 61, 70 and 71.

The plaintiff, on the other hand, brings forth facts showing that he was qualified for his job. First, Mr. Johnson has produced evidence that he received an award for preventing errors that could ultimately have caused damage either to work in progress or to the factory itself. He claims that this award is evidence of his competence to do his job, and is evidence that Western Zirconium considered him a valued employee.

Mr. Johnson also alleges that a record of performance errors was built against him by his racially biased supervisor, in order to create a pretext for his termination. In support of this contention, Johnson points to the deposition testimony of Michael J. Healy. In essence, Mr. Healy testified that based on his personal observations he believed that the plaintiff's supervisor, Jerry Ward, was racially biased, and that because of this bias, Ward treated Mr. Johnson differently than other employees. Mr. Healy explained as follows:

Q. Did you, in the course of your dealings with Jerry Ward, have any reason to think that he was racially biased?

A. Yes.

Q. Tell me why, why you thought that?

A. Just—I was known as probably one of the biggest bigots there, I left Portland because both of my cousins had been brutally raped, almost killed by blacks. My house had been broken into so much I put on burglar alarms. I took this job here because of the lack of black faces. He and other people that were racially biased knew they could say things around me, and I'd generally agree with them.

Q. Go ahead. Are you saying—

A. A lot of talks and things over the years.

Q. Well, tell me specifically, as specifically as you can remember.

A. Boy, I guess I should have kept notes. I guess the conversations regarding Billy being black and having a white girlfriend.

Q. You had conversations with—

A. Jerry Ward, oh, yes.

Q. —Jerry Ward, in which he raised that issue?

A. Uh-huh.

Q. And what did he say about it?

A. He didn't like it. My office in Production Control is basically probably the highest visited office, and you're talking about probably 30 conversations a day, five days a week.

Q. With a variety—

A. With everybody, yes. To try to pinpoint exact days and things, it's pretty impossible.

Q. How many conversations like the one you've just described to me would you say you had over the years with Jerry Ward about Billy Johnson's girlfriends?

A. Maybe ten or fifteen.

Q. Did you have any other conversations with Jerry Ward that you say, or in your opinion, indicated that Jerry had a bias against black people in general or Billy Johnson in particular?

A. There was a time that Jerry was accusing Billy Johnson of hitting our yard truck with a forklift. It was sort of a dumb little thing. Nobody knew what had happened but all of a sudden he has blaming Billy for it. And Billy had made remarks to me when I would be out there to load, to give him a schedule, that he was really uptight because Jerry or the Warden was all over him, just really giving him a hard time. So I had told Jerry after that conversation that, you know, he was the one that left the flashlight, that Jerry was the one that left the flashlight in the furnace and had ruined all of that material. Why is he picking on Billy? Billy hasn't done anything.

Q. In the conversation about Billy hitting the yard truck with the forklift, were racial comments made, or was it simply the content that, of all the people to blame, Jerry Ward was picking out Billy Johnson?

A. What you said, the context. It was always Billy Johnson's fault.

Deposition of Michael J. Healy at 24–26. Based on this testimony, an inference could be drawn that because of his supervisor's racial bias, Mr. Johnson's work was scrutinized more closely than the work of other employees in his same position. This inference clearly supports the plaintiff's claim of disparate treatment and discrimination. It also calls into question the validity of Mr. Johnson's record of performance problems, and its use to show that the plaintiff was unqualified for his job.

Since disputed facts must be construed against the movant and in favor of the plaintiff on defendant's motion for summary judgment, this court concludes that the plaintiff has shown sufficient facts to establish a prima facie case of discrimination, or at least a potential for a prima facie case at trial. Although Western Zirconium disputes the evidence of disparate treatment, the proffered evidence is clearly enough to raise a genuine issue of material fact.

## C. Legitimate Non–Discriminatory Reason for Termination

As stated above, once the plaintiff has established a prima facie case, the burden of production shifts to Western Zirconium to show that there was a legitimate non-discriminatory reason for terminating the plaintiff. "To accomplish this, [Western Zirconium] must clearly set forth, through the introduction of admissible evidence, the reasons for plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." *Mohammed v. Callaway*, 698 F.2d 395, 399 (10th Cir.1983) *quoting Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

In the present case, Western Zirconium contends that the plaintiff was terminated because of unsatisfactory job performance. Western Zirconium again bases this contention on the record of Mr. Johnson's many performance errors. As noted above, however, the plaintiff has proffered evidence from which an inference may be drawn that the performance record itself was tainted by racial bias. If the plaintiff's performance record was tainted by racial bias, it could not be used to support the defendant's claim that there was a legitimate non-discriminatory reason for terminating the plaintiff. Thus, it appears to the court that a genuine issue of material fact exists as to whether, because of racial bias, Mr. Johnson's work was scrutinized more than the work of other employees in his same position, and whether his performance record was tainted by such racial bias.

## IV. CONCLUSION

Based on the above analysis, the court finds that the plaintiff has established a prima facie case of discrimination under

Title VII, or that he at least has the potential for making out a prima facie case at trial. The defendant has attempted to show a legitimate non-discriminatory reason for plaintiff's termination. The court finds, however, that a genuine issue of material fact exists on this issue. Because different inferences can be drawn from the evidence presented by the parties, this case is not one for summary judgment. Therefore, defendant's motion for summary judgment must be, and is, denied.

IT IS SO ORDERED.