Eva TRUJILLO, Plaintiff–Appellant,

v.

**GRAND JUNCTION REGIONAL CENTER and William Jackson, Defendants–Appellees.**

No. 89–1376.

United States Court of Appeals, Tenth Circuit.

March 25, 1991.

**974**

Penfield W. Tate, II, Trimble, Tate & Nulan, P.C., Denver, Colo., for plaintiff-appellant.

James M. Humes (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Deena Aronowicz, Asst. Atty. Gen., Denver, Colo., with him on the brief), Asst. Atty. Gen., for defendants-appellees.

Before HOLLOWAY, Chief Judge, and BARRETT and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff-appellant Eva Trujillo appeals a district court order dismissing her claims against defendants Grand Junction Regional Center and William Jackson (Mr. Jackson) under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. FACTUAL BACKGROUND

Mr. Jackson, superintendent of the Grand Junction Regional Center, terminated Trujillo, a Hispanic woman, from her employment with the Center following his investigation of the death of one of the Center's patients on January 23, 1987. Trujillo was a Developmental Disability Technician II Supervisor (Tech II supervisor), responsible for supervising three employees during the night shift at the Center. Each of these three employees held the position of Developmental Disability Technician I (Tech I employee). Trujillo and one Tech I employee worked in the Redwood Dormitory, whereas the other two Tech I employees worked in the Spruce Dormitory.

On the evening of January 22, 1987, Trujillo reported for duty at 11:00 p.m., although her shift usually began at 10:00 p.m. A member of the temporary employee pool, Earnestine Hardrick, was substituting for the Tech I employee who usually worked with Trujillo in the Redwood Dormitory. As part of their duties, Trujillo and Hardrick were responsible for performing bed checks every thirty minutes. A later investigation revealed that during the early morning hours of January 23, one of the patients for whom Hardrick was responsible opened his window and crawled, jumped, or fell to the ground below. He was not discovered until about 7:00 a.m. The patient died later that day from hypothermia.

Center employees are required to record a resident's personality characteristics in the "daybook" when they believe a resident's safety would be better protected if other employees knew of that characteristic. All employees are required to review the daybook's contents. An entry in this daybook stated the decedent had been seen opening and going out windows.

At trial, Hardrick testified that she conducted her bed checks prior to 5:00 a.m., but failed to do the required checks at 5:30 and 6:00 a.m. Hardrick stated that although she knew she was responsible for performing the bed checks, Trujillo had failed to instruct her on Center procedures

or direct her to any manual outlining those procedures. Hardrick further testified Trujillo had not warned her of the decedent's propensity to open and climb out of windows.

Although the Center's night shift employees remain on duty until 6:30 a.m., the day shift employees arrive at 6:00 a.m. Brenda Jackson (Ms. Jackson) replaced Trujillo as the Tech II supervisor on the morning of January 23. Each Tech I employee on the day shift is responsible for eight patients and begins the day by waking, bathing, and dressing each resident in her group. Each Tech I employee performs bed checks at the beginning of her day shift and reports to Ms. Jackson. Ms. Jackson then completes the census sheet relying on this information.

Based on the reports received from the Tech I employees, Ms. Jackson reported that all residents of the Redwood Dormitory were present at the beginning of the day shift on January 23. A subsequent investigation, however, revealed the Tech I employee responsible for the decedent's dormitory area failed to make the required bed checks at the beginning of her shift. This employee claimed she failed to notice the decedent's absence because her attention was focused on other residents in her group.

Following a complete investigation, Mr. Jackson terminated Trujillo and Hardrick. His decision to fire Trujillo was based on her failure to properly supervise Hardrick. Mr. Jackson did not terminate Ms. Jackson or the Tech I employee responsible for the decedent's dormitory area during the day shift.

Trujillo then filed this action, claiming discriminatory discharge. The district court granted defendants' motion for summary judgment on the section 1981 claim, holding that under the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), this statute does not provide an action for discriminatory discharge. The district court also granted summary judgment in favor of the defendants on the section 1983 claim. After a three day trial, the court concluded Trujillo had not proven she had been treated disparately and therefore dismissed her Title VII claim for discriminatory discharge.

## II. DISCUSSION

### A. *The Section 1981 claim*

■ Trujillo contends a claim for discriminatory discharge can be asserted under section 1981. We disagree. The Supreme Court reaffirmed in *Patterson,* 109 S.Ct. at 2369, that section 1981 prohibits racial discrimination in the making and enforcing of contracts, thereby refusing to overrule its decision in *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). After reviewing the legislative history of section 1981, the Court concluded actions relating to the terms and conditions of an employment contract, such as racial harassment, are not cognizable under this statute. *Patterson,* 109 S.Ct. at 2372–75. The Court held that section 1981 does not provide a remedy for racial harassment in employment. *Id.*

Although the Supreme Court did not address directly the question whether discriminatory discharge is actionable under section 1981 in *Patterson, see Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 110 S.Ct. 1331, 1336 n. 3, 108 L.Ed.2d 504 (1990), the Court's language and reasoning show section 1981 is not available in such cases. The Court in *Patterson* found the plain language of section 1981 indicates the statute "does not apply to conduct which occurs *after* the formation of a contract and which does not interfere with the right to enforce established contract obligations." 109 S.Ct. at 2369 (emphasis added). It also noted that courts should be reluctant "to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute." *Id.*

The Court in *Patterson* refused to extend section 1981 to racial harassment cases because Title VII's remedial scheme would be circumvented if plaintiffs were permitted to bring their claims under sec-

tion 1981. *Id.* 109 S.Ct. at 2375. As the Court explained:

> Unnecessary overlap between Title VII and § 1981 would ... upset the delicate balance between employee and employer rights struck by Title VII.... For instance, a plaintiff in a Title VII action is limited to a recovery of backpay, whereas under § 1981 a plaintiff may be entitled to plenary compensatory damages, as well as punitive damages in an appropriate case. Both the employee and employer will be unlikely to agree to a conciliatory resolution of the dispute under Title VII if the employer can be found liable for much greater amounts under § 1981.

*Id.* 109 S.Ct. at 2375 n. 4; *see also Overby v. Chevron USA, Inc.,* 884 F.2d 470, 473 (9th Cir.1989) ("[t]he Court in *Patterson* counseled against stretching the meaning of section 1981 to protect conduct already covered by Title VII").

We are convinced there is no reason in this case to adopt a "tortuous construction" of section 1981 to provide a remedy for discriminatory discharge because Title VII's "detailed remedial scheme" provides plaintiff an adequate remedy for this form of alleged racial discrimination. *Patterson,* 109 S.Ct. at 2375. Every appellate court that has addressed this issue agrees the *Patterson* decision requires the conclusion that a claim for discriminatory discharge cannot be asserted under section 1981. *See Williams v. First Union Nat'l Bank,* 920 F.2d 232, 234 (4th Cir.1990); *Prather v. Dayton Power & Light Co.,* 918 F.2d 1255, 1256–58 (6th Cir.1990); *Patterson v. Intercoast Management of Hartford, Inc.,* 918 F.2d 12, 14 (2d Cir.1990); *Thompkins v. Dekalb County Hosp.*

*Auth.,* 916 F.2d 600, 601 (11th Cir.1990); *Gonzalez v. Home Ins. Co.,* 909 F.2d 716, 722 (2d Cir.1990); *McKnight v. General Motors Corp.,* 908 F.2d 104, 109–10 (7th Cir.1990); *Courtney v. Canyon Television & Appliance Rental,* 899 F.2d 845, 849 (9th Cir.1990); *Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805, 807–08 (5th Cir.1990).[1] We see no reason to adopt the "tortuous construction" of section 1981 urged by Trujillo. We hold the district court properly dismissed her discriminatory discharge claim under section 1981.

### B. *The Title VII Claim for Disparate Treatment*

■ Trujillo contends she received disparate treatment and is entitled to recovery under Title VII. We disagree. When a trial transcript is not designated as part of the record on appeal, an appellate court cannot review the district court's factual findings and must accept them as correct. *Rachbach v. Cogswell,* 547 F.2d 502, 504 (10th Cir.1976). Here, neither party designated the trial transcript as part of the record on appeal. Thus, our review is limited to determining whether the district court properly applied the law to the facts in determining plaintiff had not received disparate treatment.

■ The Supreme Court outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the requirements for proving racial discrimination by demonstrating disparate treatment. As the Court explained, a plaintiff has the ultimate burden of proving the defendant

---

1. Only one court has reached the opposite conclusion. In *Hicks v. Brown Group, Inc.,* 902 F.2d 630, 638–39 (8th Cir.1990), the court opined that "[d]ischarge is fundamentally different from racial harassment or discrimination in the terms or conditions of employment." The court refused "to construe Section 1981 as prohibiting an employer from refusing to hire someone based on her race, but then permitting the discharge of that same employee because of her race a month or a year later." *Id.* at 639.

In a later opinion, however, a different panel of the Eighth Circuit reluctantly followed *Brown*

*Group.* It noted that "[i]n our opinion, the Supreme Court's decision in *Patterson* precludes section 1981 suits for discriminatory termination of employment." *Taggart v. Jefferson County Child Support Enforcement Unit,* 915 F.2d 396, 397 (8th Cir.1990). The Eighth Circuit recently granted rehearing en banc in *Taggart.* In light of this, the Supreme Court granted certiorari in *Brown Group,* vacated the opinion, and remanded the case back to the Eighth Circuit. —— U.S. ——, 111 S.Ct. 1299, 113 L.Ed.2d 234 (1991).

treated her less favorably than others because of her race. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. A plaintiff first must establish a prima facie case of discrimination. *Id.; McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. To establish a prima facie case of discriminatory discharge, a plaintiff must prove by a preponderance of the evidence: (1) she belongs to a protected class or minority; (2) she was qualified for her job; (3) she was terminated despite her qualifications; and (4) after she was fired, her job remained open and the employer sought applicants whose qualifications were no better than her qualifications. *See Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94; *Crawford v. Northeastern Oklahoma State Univ.*, 713 F.2d 586, 587 (10th Cir.1983).

 Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action through the introduction of admissible evidence. The reason must be clear and reasonably specific, although the defendant need not convince the court it actually was motivated by that reason. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95. If the defendant meets this burden of production, a plaintiff then must prove by a preponderance of the evidence the employer's proffered reason for terminating the plaintiff was merely pretextual. *Id.* at 255–56, 101 S.Ct. at 1094–95; *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. at 1825–26. A plaintiff may prove pretext by showing that the employer, more likely than not, was motivated by a discriminatory reason or that the employer's explanation is not credible. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. If a plaintiff meets this burden, she is entitled to recovery under Title VII.

 In the present case, the district court found "[t]he evidence overwhelmingly demonstrates that the plaintiff failed in her duties of supervision." Based on this factual finding, the court concluded Trujillo did not establish a prima facie case of discrimination because she was unqualified for the position from which she was terminated. Since Trujillo did not satisfy the initial burden of proof, we are convinced she is not entitled to relief under Title VII.

Trujillo contends she was subjected to disparate treatment because a similarly situated caucasian Tech II Supervisor, Ms. Jackson, was not terminated as a result of the incident leading to the patient's death. Relying on *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), Trujillo alleges the defendants' refusal to terminate Ms. Jackson is evidence of intentional racial discrimination giving rise to a right of recovery under Title VII. In *McDonald*, two white employees of a transportation company were terminated for misappropriating cargo, but a black employee, who was charged with the same offense, was not discharged. 427 U.S. at 275–76, 96 S.Ct. at 2576–77. The Court concluded that "[w]hile Santa Fe may decide that participation in a theft of cargo may render an employee unqualified for employment, this criterion must be 'applied, alike to members of all races.'" *Id.* at 283, 96 S.Ct. at 2580.

We are convinced the present case is distinguishable from *McDonald*. Here, the district court found Trujillo had not performed her supervisory role properly. In contrast, the district court found Ms. Jackson had fulfilled her supervisory responsibilities. Thus, there is no evidence Mr. Jackson applied qualification criteria disparately based on race as in *McDonald*. Because we must uphold the district court's factual finding that Ms. Jackson was not a similarly situated employee as compared with Trujillo, we conclude the district court properly dismissed Trujillo's claim for disparate treatment under Title VII.

### C. *The Section 1983 Claim*

Trujillo contends she has asserted a valid claim under 42 U.S.C. § 1983. We disagree. Section 1983 does not create any substantive rights but rather "creates only a remedy for violations of rights secured by federal statutory and constitutional law." *Tafoya v. Adams*, 816 F.2d 555, 558 n. 5 (10th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987). Tru-

jillo asserts two possible bases for her section 1983 claim: violation of section 1981 and Title VII. Because we find Trujillo does not have a valid claim on either basis, we hold the district court properly granted summary judgment in favor of the defendants on her section 1983 claim. *See Long v. Laramie County Community College Dist.*, 840 F.2d 743, 752 (10th Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988). We therefore AFFIRM the district court's grant of summary judgment in favor of the defendants on the section 1981 and section 1983 claims and the dismissal of the Title VII claim for disparate treatment.