(813 P.2d 930)

No. 65,724

WILLIAM STEWART, *Appellant,* v. THE STATE OF KANSAS, DE-PARTMENT OF ADMINISTRATION, and MORTON OELKE, Individ-ually and in His Official Capacity as an Employee of Defendant Department, *Appellees.*

—

Opinion filed June 21, 1991.

*Pantaleon Florez, Jr.,* of Topeka, for appellant.

*Billy E. Newman,* of Kansas Department of Administration, of Topeka, for appellees.

Before BRISCOE, C.J., ELLIOTT and LARSON, JJ.

LARSON, J.: William Stewart appeals the trial court's dismissal of his race discrimination claims against the Department of Administration and Morton Oelke. He also appeals the trial court's retroactive application of its ruling.

Stewart is a black male employed as a printing press operator assistant in the department. His employment was terminated because he could not perform his regular job duties due to a medical restriction that he not lift more than 25 pounds.

Stewart appealed his job termination to the Kansas Civil Service Board (CSB), which concluded the department had acted unreasonably in terminating Stewart's job and had erroneously concluded he could not perform his job duties. The CSB restored Stewart to his previous job status and ordered that he receive back pay from the date he had been terminated.

After receiving the favorable result from the CSB, Stewart resumed his employment and on December 31, 1987, filed the present action setting forth claims for relief under 42 U.S.C. §§ 1981 and 1983 (1988), plus other contentions which are not in issue herein.

The caption names Oelke individually and as an employee of the department, although the allegations in the petition stated

Oelke acted in his official capacity. Stewart's petition alleged both defendants were guilty of racially discriminatory acts and practices resulting in his termination, which entitled him to damages.

The defendants' answer and motion to dismiss asserted defenses of failure to exhaust administrative remedies, statute of limitations, and res judicata. The trial court granted the defendants' first motion to dismiss.

In a prior opinion, our court concluded that Stewart's claims prior to December 31, 1985, were barred by the statute of limitations, that his claims under 42 U.S.C. §§ 1981 and 1983 were not barred by the proceedings before the CSB, and that he had exhausted his administrative remedies. (No. 63,087, unpublished opinion filed September 1, 1989.)

After remand, both defendants filed a second motion to dismiss on the grounds that Stewart's claims are barred because of the rulings in *Patterson v. McLean Credit Union*, 491 U.S. 164, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989), and *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989).

The trial court granted the defendants' motion. Stewart moved to alter or amend the judgment, claiming *Patterson* should not be given retroactive effect. This motion was denied by the trial court. Stewart appeals from all the trial court's rulings. We affirm.

*The trial court did not err in concluding that*
*Patterson v. McLean Credit Union*
*barred Stewart's discriminatory discharge claim.*

Stewart brings his claim of discriminatory discharge pursuant to 42 U.S.C. § 1981, which provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

The critical part of this statute to our case is that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

Although Justice Kennedy, writing for a five to four majority in *Patterson* assured us of ease of application of its rule ("We

believe that the lower courts will have little difficulty applying the straightforward principles that we announce today," 491 U.S. at 185 n.6), six judges in the federal district court in Kansas have divided equally as to how *Patterson* should be applied. Since the Kansas Supreme Court has not yet visited this issue, the divergence of opinion by the federal judges requires that we examine the rationale and conclusion of *Patterson* in considerable detail.

Brenda Patterson, a black woman, was employed by McLean Credit Union as a teller and file coordinator for 10 years before being laid off. She sued under 42 U.S.C. § 1981, alleging harassment, failure to promote, and unlawful discharge, all because of her race.

Patterson received a jury verdict on her § 1981 claims of alleged discrimination in her discharge and her nonpromotion, but the trial court determined her claim for racial harassment was not actionable under § 1981 and refused to submit it to the jury.

On appeal, Patterson alleged the trial court erred in refusing to submit to the jury her § 1981 claim based on racial harassment and in instructing that in order to prevail on her § 1981 claim of discriminatory failure to promote, she had to show she was better qualified than the white employee she alleges was promoted in her stead. In affirming, the Court of Appeals held that while instances of racial harassment " 'may implicate the terms and conditions of employment under Title VII [of the Civil Rights Act of 1964, 78 Stat. 253, 42 U.S.C. § 2000e *et seq.*,] and of course may be probative of the discriminatory intent required to be shown in a § 1981 action,' . . . racial harassment itself is not cognizable under § 1981 because *'racial harassment does not abridge the right to "make" and "enforce" contracts.'* " (Emphasis added.) 491 U.S. at 170 (quoting *Patterson v. McLean Credit Union,* 805 F.2d 1143, 1145-46 [4th Cir. 1986]).

After the United States Supreme Court granted certiorari, 484 U.S. 814 (1987), and oral arguments were heard, the parties in *Patterson* were requested to brief and argue "[w]hether or not the interpretation of 42 U.S.C. § 1981 adopted by this court in *Runyon v. McCrary,* 427 U.S. 160 (1976), should be reconsidered." 485 U.S. 617, 99 L. Ed. 2d 879, 108 S. Ct. 1419 (1988).

The *Patterson* Court concluded that *Runyon* should not be overruled and "reaffirm[ed] that § 1981 prohibits racial discrim-

ination in the making and enforcement of private contracts," 491 U.S. at 172, but held "that racial harassment relating to the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." 491 U.S. at 171.

After explaining the affirmance of *Runyon,* Justice Kennedy stated, in that portion of the Court's opinion critical to our decision herein:

"By its plain terms, the relevant provision in § 1981 protects two rights: 'the same right . . . to make . . . contracts' and 'the same right . . . to . . . enforce contracts.' The first of these protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by the state contract law and Title VII." 491 U.S. at 176-77.

If racial discrimination exists in the work environment it is actionable under "the more expansive reach of Title VII of the Civil Rights Act of 1964," which "makes it unlawful for an employer to 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.' 42 U.S.C. § 2000e-2(a)(1)." 491 U.S. at 180. Although recognizing some overlap between Title VII and 42 U.S.C. § 1981, the Court noted that the integrity of Title VII's procedure is preserved. 491 U.S. at 181.

The timing of the two federal provisions (§ 1981 and later Title VII) was deemed to be important to the *Patterson* majority, which stated:

"We should be reluctant, however, to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute. [Citation omitted.] . . . . But, in any event, the availability of the latter statute should deter us from a tortuous construction of the former statute to cover this type of claim." 491 U.S. at 181.

Nowhere in the *Patterson* opinion do we find a specific prohibition of the application of § 1981 to a claim of unlawful termination, but the unmistakable language and reasoning clearly show § 1981 is not available in a discriminatory discharge case.

The words of Justice Brennan in *Patterson* give credence to this construction when he opens his ringing concurring and dissenting opinion with the following statement:

"What the Court declines to snatch away with one hand, it takes with the other. Though the Court today reaffirms § 1981's applicability to private conduct, it simultaneously gives this landmark civil rights statute a needlessly cramped interpretation. The Court has to strain hard to justify this choice to confine § 1981 within the narrowest possible scope, selecting the most pinched reading of the phrase 'same right to make a contract' . . . ." 491 U.S. at 189 (Brennan, J., concurring and dissenting).

Justice Brennan's dissent is eloquent and persuasive, but the fact of life with which we are faced is that it is a minority opinion and we are duty-bound by our system of jurisprudence to follow and apply the wording and meaning of majority decisions. See *Ritchie v. Johnson*, 158 Kan. 103, 117-18, 144 P.2d 925 (1944). Clearly and simply stated, 42 U.S.C. § 1981 does not provide a remedy for discriminatory discharge.

Two recent decisions from the 10th Circuit Court of Appeals give comfort to our conclusion. Circuit Judge Tacha, in *Trujillo v. Grand Junction Regional Center*, 928 F.2d 973, 976 (10th Cir. 1991), stated: "Every appellate court that has addressed this issue agrees the *Patterson* decision requires the conclusion that a claim for discriminatory discharge cannot be asserted under section 1981." See 928 F.2d at 976, citing cases from the 2nd, 4th, 5th, 6th, 7th, 9th, and 11th Circuits and footnote 1 at 976, citing *Hicks v. Brown Group, Inc.*, 902 F.2d 630, 638-39 (8th Cir. 1990), the one opinion that had reached an opposite conclusion. *Hicks* has been vacated by the United States Supreme Court and remanded to the 8th Circuit, ___U.S. ___, 113 L. Ed. 2d 234, 111 S. Ct. 1299 (1991), in light of the recently granted rehearing *en banc* in a companion case, *Taggart v. Jefferson County Child Support Enforcement Unit*, 915 F.2d 396, 397 (8th Cir. 1990).

In the other 10th Circuit opinion, *Carter v. Sedgwick County, Kan.*, 929 F.2d 1501 (10th. Cir. 1991), Circuit Judge Ebel recognized that *Patterson* did not settle the issue of whether § 1981

applies to a race-based discharge (see *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 108 L. Ed. 2d 504, 515 n.3, 110 S. Ct. 1331 [1990]), but stated "the logic of the Court's opinion in *Patterson* indicates that a claim of discriminatory discharge does not implicate the right 'to make . . . contracts' protected by § 1981 because a discharge occurs *after* the employment contract has been formed." 929 F.2d at 1504. *Trujillo* was followed and the United States District Court for the District of Kansas' determination of liability for discriminatory discharge under § 1981 was reversed.

We will not attempt to reconcile the opinions from the federal district courts of Kansas collected in *Ginwright v. Unified School Dist. No. 457*, 756 F. Supp. 1458 (D. Kan. 1991). *Ginwright* should be contrasted with *Boyd v. Telecable of Overland Park, Inc.*, 752 F. Supp. 388 (D. Kan. 1990).

Stewart's fallback argument to the decision we have reached is that even if § 1981 no longer applies to discriminatory discharge cases, *Patterson* cannot be applied retroactively to his case. We do not agree with his contention.

In Kansas, a judicial decision will be applied retroactively unless it establishes a new rule of law, retroactive application would not further the principle on which the decision is based, and retroactive application would cause substantial hardship or prejudice. *In re Estate of McDowell*, 245 Kan. 278, Syl. ¶ 2, 777 P.2d 826 (1989).

*Patterson* does not establish a new rule of law, it is merely a judicial decision involving a longstanding statute. The interpretation may be a strict one, but the principle on which *Patterson* is based would not be furthered by allowing Stewart to recover under § 1981.

Stewart exercised his remedies before the CSB and his employment was restored with back pay. We recognize that from Stewart's standpoint, the damages may be more expansive under a § 1981 action, but that is not a sufficient reason to allow his claims thereunder to continue in light of the decision in *Patterson*.

In *McDowell*, the Kansas Supreme Court gave retroactive effect to a United States Supreme Court decision, *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988), that rendered the Kansas nonclaim statute

involving estates unconstitutional because it did not provide actual notice to known or reasonably ascertainable creditors of an estate. *McDowell* validated an untimely claim against an estate which was filed after *Pope* was announced.

In *Hill v. Goodyear Tire & Rubber, Inc.*, 918 F.2d 877, 879-90 (10th Cir. 1990), the issue of whether *Patterson* should be applied retroactively was decided in this manner:

> "After *Patterson* was decided, Goodyear moved to dismiss this appeal on the basis that none of plaintiff's claims was still actionable in light of *Patterson*. Plaintiff responded by arguing that *Patterson* should not be applied retroactively, and that even if it were, his claims for retaliatory and discriminatory discharge should survive.
>
> "Those circuits that have considered appeals that were pending when *Patterson* was decided have applied *Patterson* retroactively. [Citations omitted.] Furthermore, the Supreme Court retroactively applied its limitation of the scope of section 1981 to the plaintiff in *Patterson*, 109 S. Ct. at 2377, 2379, and on at least one occasion has directed a circuit court to consider the effect of *Patterson* on a plaintiff's section 1981 claims on remand. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545; 110 S. Ct. 1331, 1336 n.3, 108 L. Ed. 2d 504 (1990). *We see no reason to divide the circuits on this issue and therefore, we hold that Patterson should be applied retroactively.*" (Emphasis added.)

We hold Stewart has failed to satisfy the three-prong test of *McDowell* and choose to follow the decisions of the federal courts that *Patterson* is to be applied retroactively.

Although Stewart argues that he states a claim against Oelke individually, the wording of his petition compels us to disregard this contention as being without merit. We need not reach or discuss *Will*, as the conclusion we have reached in light of *Patterson* is fatal to Stewart's claims.

Affirmed.