Kenneth E. HILL, Plaintiff–Appellant,

v.

GOODYEAR TIRE & RUBBER, INC., Jerry Wolf, James McCune, Harry Brownlee, Jesse Williams, Gregory Loney, Dick Weiser, the Travelers Indemnity Company, and Dr. Joseph W. Huston, Defendants–Appellees.

No. 89–3036.

United States Court of Appeals, Tenth Circuit.

Nov. 5, 1990.

Pantaleon Florez, Jr. (on brief), Topeka, Kan., for plaintiff-appellant.

Mick Lerner and Mark A. Stites of Stinson, Mag, & Fizzell (on brief), Overland Park, Kan., for defendant-appellee Goodyear Tire & Rubber Co.

Before McKAY, McWILLIAMS, and EBEL, Circuit Judges.

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff appeals from a jury verdict entered in favor of defendant Goodyear Tire & Rubber Co., as well as from various rulings of the district court. Plaintiff instituted the underlying action pursuant to 42 U.S.C. § 1981 for discriminatory and retaliatory discharge. Plaintiff, an African American, began working for Goodyear in August of 1975 as a mechanic in the maintenance department at the plant in Topeka, Kansas. The Topeka plant produced tires for earthmovers, trucks, and passenger vehicles, though at the time of trial it no longer produced the latter. Plaintiff was a member of the United Rubber, Cork, Linoleum, and Plastic Workers of America, AFL–CIO–CLC.

During the course of his employment, plaintiff suffered several work-related injuries, including four injuries to his back. The last injury occurred on September 25, 1979. Plaintiff was treated and returned to work in late October, but his pain gradually worsened. On January 21, 1980, plaintiff stopped working and was put on "hospital pass" (leave of absence due to injury), where he remained until he was terminated effective March 31, 1983.

Plaintiff contended that Goodyear discharged him in retaliation for his civil rights advocacy and because of his race.[1] Goodyear responded that it terminated plaintiff only because he was physically incapable of performing his job as maintenance mechanic and he was not qualified, either physically or otherwise, to perform any other job within the bargaining unit at the Topeka plant.

---

1. Plaintiff also alleged that several of Goodyear's employees conspired to discharge plaintiff because of his civil rights advocacy and his race, and that The Travelers Indemnity Co. and Dr. Huston conspired with Goodyear to terminate plaintiff's workmen's compensation benefits because of his race. All the defendants except Goodyear were removed from the action on motions for summary judgment prior to trial. Plaintiff does not appeal those summary judgment rulings.

Plaintiff also attempted to pursue a claim against Goodyear based on a hostile work environment, but the district court refused to permit him to do so on the grounds that plaintiff had not listed such a claim in the final pretrial order and that the claim would be barred by the statute of limitations in any event. The court did, however, permit plaintiff to present evidence of a hostile work environment and to argue to the jury that maintenance of such an environment was evidence of Goodyear's discriminatory intent in discharging plaintiff. Plaintiff does not appeal the district court's ruling that he could not pursue a hostile work environment claim at trial.

Plaintiff does, however, appeal two other rulings relating to his hostile work environment claim. At the conclusion of the trial, plaintiff requested that the district court enter an injunction against Goodyear's continued maintenance of a hostile work environment. The court denied this request. Plaintiff also tendered three jury instructions to the district court concerning his claim for hostile working environment. The court refused to give plaintiff's requested instructions. Plaintiff appeals these two rulings.

At the conclusion of plaintiff's case, the district court directed a verdict on plaintiff's claim for retaliatory discharge, on the basis that retaliation for civil rights advocacy in general does not state a claim for relief under section 1981. Plaintiff appeals this ruling. Plaintiff also challenges the admission of certain evidence concerning his bad character, as well as the sufficiency of the evidence to support the jury's verdict for Goodyear on the discriminatory discharge claim.

While this case was pending on appeal, the Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in which it limited the scope of claims actionable under section 1981.[2] The Court held that

the statute's protection of the right to make contracts "extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment." *Id.* at 2372. Specifically, section 1981 "prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms." *Id.* Furthermore, the statute's protection of the right to enforce contracts "embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race." *Id.* at 2373. Only "conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights," is actionable under the "right to enforce contracts" language of the statute. *Id.* "Racial harassment in the course of employment," while actionable under Title VII, is not actionable under section 1981. *Id.* at 2373–74.

After *Patterson* was decided, Goodyear moved to dismiss this appeal on the basis that none of plaintiff's claims was still actionable in light of *Patterson*. Plaintiff responded by arguing that *Patterson* should not be applied retroactively, and that even if it were, his claims for retaliatory and discriminatory discharge should survive.

■ Those circuits that have considered appeals that were pending when *Patterson* was decided have applied *Patterson* retroactively. *See, e.g., Gonzalez v. Home Ins. Co.*, 909 F.2d 716, 723 (2d Cir.1990); *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805, 807 (5th Cir.1990); *McKnight v. General Motors Corp.*, 908 F.2d 104, 110–11 (7th Cir.1990); *Hicks v. Brown Group, Inc.*, 902 F.2d 630, 634–35 (8th Cir.1990), *petition for cert. filed*, (Aug. 17, 1990); *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d

**2.** Section 1981 provides:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws

and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

845, 849 (9th Cir.1990); *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1534–35 (11th Cir.1990), *petition for cert. filed,* (July 30, 1990); *Matthews v. Freedman,* 882 F.2d 83, 84 (3d Cir.1989); *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989); *Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475, 479 (6th Cir.1989). Furthermore, the Supreme Court retroactively applied its limitation of the scope of section 1981 to the plaintiff in *Patterson,* 109 S.Ct. at 2377, 2379, and on at least one occasion, has directed a circuit court to consider the effect of *Patterson* on a plaintiff's section 1981 claims on remand. *Lytle v. Household Mfg., Inc.,* —— U.S. ——, 110 S.Ct. 1331, 1336 n. 3, 108 L.Ed.2d 504 (1990). We see no reason to divide the circuits on this issue and, therefore, we hold that *Patterson* should be applied retroactively.

■ We turn then to the first two issues on appeal. After *Patterson,* "racial harassment relating to conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." 109 S.Ct. at 2369. Therefore, since plaintiff could not assert a hostile work environment claim under section 1981, the trial court properly refused to issue an injunction against Goodyear for maintaining a hostile work environment or to instruct the jury on plaintiff's hostile work environment claim.

■ The next issue on appeal concerns the district court's refusal to submit plaintiff's claim for retaliatory discharge to the jury. We review a ruling on a motion for directed verdict *de novo. Guilfoyle ex rel. Wild v. Missouri, Kan., & Tex. R.R. Co.,* 812 F.2d 1290, 1292 (10th Cir.1987). Viewing the evidence and all inferences to be drawn therefrom in the light most favorable to plaintiff, *see id.,* the record shows that plaintiff was a leader in the local chapter of the NAACP and that at various

times during the period of his employment, he complained to management at the Topeka plant about racial slurs and other incidents of racial harassment in an attempt to bring about a more harmonious relationship between the bargaining unit employees and management. Such advocacy, while commendable, is not protected by the provisions of section 1981 as it relates only to conduct affecting the terms and conditions of employment, which itself is not actionable under the statute. *See Patterson,* 109 S.Ct. at 2369. Since plaintiff's advocacy was not protected under section 1981, his discharge, even if in retaliation for such advocacy, was not actionable under section 1981.[3] Therefore, the district court properly refused to submit plaintiff's retaliatory discharge claim to the jury.

The final two issues on appeal concern plaintiff's claim for discriminatory discharge. Goodyear contends that in light of *Patterson,* discriminatory discharge claims are no longer actionable under section 1981 because they concern conduct that occurs after the formation of the employment contract and does not affect the employee's ability to enforce his contract rights through the legal process.

The circuits are divided on the question whether discharge claims are actionable under section 1981 after *Patterson. Compare Gonzalez v. Home Ins. Co.,* 909 F.2d at 722 ("run-of-the-mine claim that the termination of plaintiffs' contracts was discriminatory" not actionable under section 1981); *Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d at 808 (termination is postformation conduct and not actionable under section 1981); *McKnight v. General Motors Corp.,* 908 F.2d at 108, 112 (claims for "termination on grounds of race and retaliation for filing antidiscrimination complaints" not actionable under section 1981); *Courtney v. Canyon Television & Appliance Rental, Inc.,* 899 F.2d at 849 ("Discharge is the type of postformation 'breach of contract' conduct not protected by section 1981."); *with Hicks v.*

3. We express no opinion as to whether an employee could state a claim under section 1981 if he were discharged in retaliation for advocating changes in conduct actionable under section 1981, *e.g.,* discriminatory hiring practices.

*Brown Group, Inc.*, 902 F.2d at 635 ("claim for discriminatory discharge continues to be cognizable under Section 1981").

We need not decide whether discriminatory discharge claims such as plaintiff's are still actionable under section 1981 after *Patterson*, however, because we can decide the issues regarding the admission of evidence of plaintiff's bad character and the jury's verdict for Goodyear without reference to *Patterson.*

■ Plaintiff contends that the district court committed reversible error when it permitted defense counsel to question plaintiff about being a foul mouthed and vulgar employee. R.Vol. IV at 694–96. Although plaintiff objected to this questioning, he later permitted Mr. Jesse Williams, the personnel manager, to testify to similar matters without objection. *See* R.Vol. V at 848–50. Therefore, unless the district court committed plain error when it admitted Mr. Williams' testimony without objection, the admission of evidence of plaintiff's bad character does not warrant reversal. *See United States v. Lord,* 907 F.2d 1028, 1029 (10th Cir.1990). We hold that the admission of such evidence was not plain error.

■ Plaintiff also contends that the jury's verdict for Goodyear was against the weight of the evidence. We disagree. The record contains substantial evidence to support the jury's verdict. *See Kitchens v. Bryan County Nat'l Bank,* 825 F.2d 248, 251 (10th Cir.1987) ("our review in relation to evidence [is] limited to the inquiry as to whether the record contains substantial evidence to support the jury's ... conclusion").

Viewing the evidence in the light most favorable to Goodyear, *see id.,* the record shows that plaintiff's job as a maintenance mechanic required heavy lifting, bending, stooping, twisting, and pulling. During the course of his employment, plaintiff suffered four back injuries. After his third back injury in June of 1978, plaintiff was unable to work for over six months. During this time, plaintiff was diagnosed as having degenerative disc disease complicated by repeated trauma, and was rated by one of his treating physicians, Dr. Redford, as being thirty to forty percent partially disabled.

Plaintiff returned to work in February of 1979 and reinjured his back on September 25, 1979. Plaintiff was treated for this injury and returned to work in late October. On January 21, 1980, however, plaintiff stopped working due to his pain and was put on hospital pass. In late May of 1981, while still on hospital pass, plaintiff was examined by Dr. Redford, who reported:

[Plaintiff's] back condition really makes it impossible for him to return to his previous work. Furthermore, I feel that in terms of returning to any kind of heavy lifting, he should be considered 100% disabled.... I do not think that there is any other therapy that we could recommend at this time that would restore his ability to return to his previous employment.

Addendum to Brief of Appellee, Exhibit 401.

Sometime after his last injury, plaintiff instituted administrative proceedings to obtain workmen's compensation benefits. In January of 1983, the Administrative Law Judge rendered his opinion. He concluded that plaintiff was eighty percent permanently partially disabled, and awarded him $72,500.91.

Upon receipt of the A.L.J.'s decision, members of Goodyear management at the Topeka plant evaluated all the jobs within the bargaining unit at the plant and determined, based on the medical evidence, that plaintiff could not perform any job with his physical disabilities. Numerous witnesses testified that essentially all the bargaining unit jobs in the Topeka plant, whether in production or maintenance, required some heavy lifting. Therefore, members of management at the Topeka plant recommended to corporate headquarters in Akron, Ohio, that plaintiff be retired from service on the ground that "he is no longer able to meet the requirements of his job and is unable to qualify for transfer to another job," pursuant to Article X of the

Pension, Insurance and Service Award Agreement between Goodyear and the Union. R.Vol. V at 843; Appendix to Brief of Appellant, Doc. 2. Corporate headquarters approved the recommendation, and plaintiff was retired, with a service award, effective March 31, 1983.

The record amply supports Goodyear's position that it terminated plaintiff solely because he was incapable of performing any job within the bargaining unit in the Topeka plant, and not because of his race. Therefore, we affirm the jury's verdict for Goodyear.

The judgment of the district court for the District of Kansas is AFFIRMED. Appellees' motion to dismiss is DENIED.