**Wardell BLAND, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.**

Civ. A. No. 91–F–2113.

United States District Court, D. Colorado.

Nov. 18, 1992.

Lee T. Judd, Andrew T. Brake, P.C., Denver, CO, for plaintiff.

Walter J. Downing, Kraft, Johnson & Belt, Denver, CO, for defendant.

## ORDER REGARDING MOTION FOR PARTIAL SUMMARY JUDGMENT

SHERMAN G. FINESILVER, Chief Judge.

■ This case involves allegations of racial discrimination under Title VII of the Civil Rights Act of 1964 as amended. Jurisdiction is based upon 28 U.S.C.A. § 1343. This matter comes before the Court on Defendant's Motion for Partial Summary Judgment, under Rule 56 of the Federal Rules of Civil Procedure. The issue presented is whether the damages and jury trial provisions of the Civil Rights Act of 1991 ("the Act") should be applied to conduct that occurred prior to the Act's enactment for cases filed after the Act's passage. We hold that the provisions do cover such conduct for cases filed after enactment.

### I.

Plaintiff, Wardell Bland, was employed in the position of Carman by Defendant, Burlington Northern Railroad Company

("Burlington") from approximately June 1, 1979 through August 3, 1979, and again from approximately October 19, 1979 through January 8, 1982.[1] Bland was terminated in 1982 as a result of Burlington's workforce reduction. In or about July of 1990, Bland applied to Burlington for the vacant position of Carman. He alleges that after being told that the position would be filled by an individual transferring from within the company, he discovered that Burlington had hired someone from outside the company. Bland further alleges that although he was a certified Carman, the person hired was merely an apprentice Carman. He therefore claims that he was better qualified than the individual hired in his place, and that he was not hired solely because he is black.

Bland timely filed a complaint of discrimination with the Equal Employment Opportunity Commission on or about January 7, 1991. On or about September 10, 1991, he received a notice of right to sue. On December 3, 1991, he filed a complaint in this Court, alleging racial discrimination in violation of Title VII and 42 U.S.C.A. § 1981. In his Second Amended Complaint, filed December 23, 1991, he requested compensatory and punitive damages under his Title VII claim, pursuant to section 102 of the Civil Rights Act of 1991. In its motion for partial summary judgment, Defendant challenges the applicability to this action of the Civil Rights Act of 1991, claiming that section 102 of the Act does not cover conduct that occurred prior to its enactment, regardless of when an action is filed.

## II.

### A. Legislative History and Common Law Precedent

Neither the Act nor its legislative history offer any significant guidance on whether the Act applies to pre-enactment conduct.[2] The reasoning of the few courts which have found the Act's intent to be clear is unpersuasive. For example, the Eighth Circuit Court of Appeals in *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1378 (8th Cir.1992), held that the procedural legislative history of the Act was dispositive. Pointing out that the President vetoed a bill with an explicit retroactivity provision while signing a later bill that was silent, the Eighth Circuit concluded that "[w]hen a bill mandating retroactivity fails to pass, and a law omitting that mandate is then enacted, the legislative intent was surely that the new law be prospective only; any other conclusion simply ignores the realities of the legislative process." We believe that conclusion to be flawed. The President's veto established only the fact that he disfavored retroactivity. At the same time, Congress' passage of the original bill including retroactivity—and its refusal to pass the President's bill—established that Congress, by a majority, favored retroactivity. The elimination of the retroactivity provision meant only that the two branches could not agree and that progress could only be made by the "politically convenient" compromise that "dumped the question into the judiciary's lap without guidance." *Luddington*, 966 F.2d at 227; *see also Mozee*, 963 F.2d at 933 (the procedural legislative history argument for prospective application only "is negated by the fact that Congress did not adopt the Bush Administration's proposed bill which, in contrast, contained explicitly prospective language"). The failure of a two-thirds majority to pass one law does not mean that the law's opposite is in effect. The President's veto power is a power only to negate, not to make law by implication.

We turn next to the common law. Due to the presence of two conflicting lines of Supreme Court authority on the issue of retroactive application of newly enacted laws and regulations, much has been written on the subject of whether the Civil Rights Act of 1991 applies to cases pending

---

1. All factual recitations in this Order have been alleged in the litigants' pleadings.

2. *See, e.g., Gersman v. Group Health Ass'n., Inc.,* 975 F.2d 886 (D.C.Cir.1992); *Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225 (7th Cir.1992); *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992); *Hansel v. Public Service Co.,* 778 F.Supp. 1126 (D.Colo.1991) (Babcock, J.).

at the time of its enactment.[3] Most courts addressing the issue, including this one, have ruled that the Civil Rights Act of 1991 does not apply retroactively to cases already filed and pending at the time of the Act's enactment. *See Burchfield v. Derwinski*, 782 F.Supp. 532, 537 (D.Colo.1992). Now, however, cases filed after the Act's enactment present a new issue. Whether section 102's new provisions for a trial by jury and compensatory and punitive damages also apply only prospectively is an entirely different question where, as here, the case was filed *after* the date of the Act's enactment.

In *Burchfield*, we expressly reserved judgment on whether the Act applies to actions that challenge pre-Act conduct but that were filed after the Act's effective date. *Id.* at 534 n. 2. Only a handful of district courts in the federal court system have *definitively*[4] ruled on the matter as properly presented. The courts are split between those holding that the Act or particular sections within it do not apply to pre-enactment conduct, *see Moore v. Hughes Aircraft Co., Inc.*, Civil Action No. 92–M–1264, Memorandum Opinion and Order (D.Colo. Aug. 5, 1992) (Matsch, J.); *Scherzer v. Midwest Cellular Telephone Co.*, 797 F.Supp. 914 (D.Kan.1992); *Crumley v. Delaware State College*, 797 F.Supp. 341 (D.Del.1992), and those that have applied the Act to pre-enactment conduct, *see Hobbs v. Denny's, Inc.*, Civil Action No. 92–S–0181, Order (D.Colo. May 14, 1992) (Sparr, J.); *Barwick v. City of Aurora Animal Care Division*, Civil Action No. 92–S–0731, Order (D.Colo. June 12, 1992) (Sparr, J.); *Great American Tool v. Adolph Coors Company*, 780 F.Supp. 1354, 1355 (D.Colo.1992) (Babcock, J.); *Jaekel v. Equifax Marketing Decision Systems, Inc.*, 797 F.Supp. 486 (E.D.Va.1992). The pronouncements of the Supreme Court on the issue of retroactivity in general are not clear and perhaps contradictory, but the Tenth Circuit has provided us with a means for harmonizing the rulings of the highest court.

---

**3.** For example, in this District, numerous opinions have been written on the subject of the Act's applicability in various procedural postures. We have reviewed and considered the following decisions in the District of Colorado: *Mass v. Martin Marietta Corp.*, 805 F.Supp. 1530 (D.Colo.1992) (Nottingham, J.); *Vickerman v. International Business Machines Corp.*, Civil Action No. 91–Z–225, Order (D.Colo. Oct. 22, 1992) (Weinshienk, J.); *Moore v. Hughes Aircraft Co., Inc.*, Civil Action No. 92–M–1264, Memorandum Opinion and Order (D.Colo. Aug. 5, 1992) (Matsch, J.); *Barwick v. City of Aurora Animal Care Division*, Civil Action No. 92–S–0731, Order (D.Colo. June 12, 1992) (Sparr, J.); *Herrera v. Humana of Aurora, Inc.*, Civil Action No. 92–S–14, Order (D.Colo. June 11, 1992) (Sparr, J.); *Smith v. Colorado Interstate Gas Co.*, 794 F.Supp. 1035 (D.Colo.1992) (Babcock, J.); *Donaldson v. Brady*, 1992 WL 119497 (D.Colo. May 14, 1992) (Arraj, J.); *Hobbs v. Denny's, Inc.*, Civil Action No. 92–S–0181, Order (D.Colo. May 14, 1992) (Sparr, J.); *Guillory–Wuerz v. Brady*, 785 F.Supp. 889 (D.Colo.1992) (Arraj, J.); *Vaughan v. US WEST Communications, Inc.*, Civil Action No. 90–S–2238, Order (D.Colo. Feb. 5, 1992) (Sparr, J.); *Golightly–Howell v. Oil, Chemical, and Atomic Workers Int'l Union*, 788 F.Supp. 1158 (D.Colo.1992) (Carrigan, J.); *Fief v. Zellerbach Paper Co.*, Civil Action No. 90–M–1799, Memorandum Opinion and Order (D.Colo. Jan. 31, 1992) (Matsch, J.); *Burchfield v. Derwinski*, 782 F.Supp. 532 (D.Colo.1992) (Finesilver, C.J.); *Great American Tool v. Adolph Coors Company*, 780 F.Supp. 1354, 1355 (D.Colo.1992) (Babcock, J.); *Hansel v. Public Service Co. of Colo.*, 778 F.Supp. 1126 (D.Colo.1991) (Babcock, J.).

In addition, appellate proceedings are pending in the Tenth Circuit on the following cases: *Edwards v. Lujan*, Civil Action No. 85–C–2444, Order (D.Colo.1991), *appeal docketed*, Nos. 91–1247, 91–1259 (10th Cir. opened July 15 and 25, 1991); *Smith v. Denver Public Schools*, 90–S–121, Order (D.Colo.1991), *appeal docketed*, No. 91–1285 (10th Cir. opened Aug. 9, 1991); and *Steinle v. The Boeing Co.*, 1992 WL 53752 (D.Kan.1992), *appeal docketed*, No. 92–3149 (10th Cir. opened May 4, 1992).

**4.** We do not count as properly presented the decisions of those courts which had before them only the question of whether the Act applies to cases pending during the Act's enactment. *See, e.g., Vogel*, 959 F.2d at 598 (Civil Rights Act of 1991 does not apply to pre-enactment conduct), *Fray*, 960 F.2d at 1378 (section overruling judicial interpretations of 42 U.S.C. § 1981 should not be retroactively applied to pending cases or other pre-enactment conduct), *Luddington*, 966 F.2d at 229 (Civil Rights Act of 1991 not applicable on appeal), *Mozee*, 963 F.2d at 939 (procedural and damages provisions argued to be retroactive in dictum), *Thomas v. Frank*, 791 F.Supp. 470 (D.N.J.1992) (retroactive application of the compensatory and punitive damages and jury trial provisions would all visit manifest injustice upon defendant). The broad language of these cases, in light of their procedural posture, must be treated as dicta.

## B. The Standard for Determining Retroactivity

In *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 711–17, 94 S.Ct. 2006, 2015–19, 40 L.Ed.2d 476 (1973), and *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 281–83, 89 S.Ct. 518, 526–27, 21 L.Ed.2d 474 (1969), the Supreme Court directed the lower courts to apply the law in effect at the time the decision was rendered, even if that involved retroactive application to pending cases. In *Bradley,* the Court articulated a presumption that "even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." *Bradley,* 416 U.S. at 715, 94 S.Ct. at 2018.

A more recent line of cases includes *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); *see also Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 836–37, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990). The *Bowen* Court adopted the following presumption: "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208, 109 S.Ct. at 471. The Tenth Circuit has assumed the *Bowen* presumption to be in direct conflict with the presumption enunciated in *Bradley. DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). *But see Bonjorno,* 494 U.S. at 864, 110 S.Ct. at —— ("the tension" between *Bradley* and *Bowen* "is more apparent than real") (White, J., dissenting); *Gersman v. Group Health Ass'n., Inc.,* 975 F.2d 886, 895 (D.C.Cir.1992) (reconciling *Bradley* and *Bowen* as distinguishing between whether statute effects substantive or procedural changes); *Mozee,* 963 F.2d at 935–36 (same); *Jaekel,* 797 F.Supp. at 491 (same).

The Tenth Circuit expressly adopted the *Bowen* presumption against retroactive application to substantive rights and rejected the *Bradley* presumption in favor of such retroactivity. *DeVargas,* 911 F.2d at 1389–92 (holding that the Restoration Act was not to be retroactively applied). The Tenth Circuit did not overrule or even limit *Bradley* and its considerations of policy, rather, the Court simply rejected *Bradley's* presumption. The Tenth Circuit found persuasive Justice Scalia's concurrence that "a statute is deemed to be effective *only for the future* unless a contrary intent appears." *Bonjorno,* 494 U.S. at 858, 110 S.Ct. at 1588, *quoted by DeVargas,* 911 F.2d at 1392 (emphasis added). However, *DeVargas* and other prior decisions all deal with the issue of retroactivity for cases *pending* at the time of enactment, and not cases filed *after* enactment. As numerous courts have noted, whether the concept of retroactivity applies at all depends on the definition given a phrase such as "effective date" or "only for the future":

▪t might mean that the 1991 Act applies to *conduct* which occurred after the enactment, it might mean that the Act applies to *cases filed* after the enactment, it might mean that the Act applies to *all proceedings* beginning after the enactment, it might mean that the Act's provisions apply to *all pending cases* at any stage of the proceedings, or it might mean that the Act's *procedural provisions* apply to proceedings begun after enactment and *substantive provisions* apply to conduct that occurs after the enactment.

*Mozee,* 963 F.2d at 932 (emphases added). *See also Luddington,* 966 F.2d at 227 (giving various permutations of when Congress might have intended a statute to be applied); *Vogel,* 959 F.2d at 598 (same).

As we have noted, the instant case was filed after the Act's enactment. Although the Tenth Circuit has not ruled on the issue before us, the Court of Appeals' resolution of the *Bradley–Bowen* duality nevertheless offers a rationale for the resolution of this new issue.

▪ Succinctly stated, we view the Tenth Circuit's resolution to mean that the Court should apply the *Bowen* presumption against retroactivity, unless *Bradley* can be invoked to rebut that presumption with-

out conflicting with the "venerable rule of statutory interpretation, i.e., that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *DeVargas*, 911 F.2d at 1393 (quoting *Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985)); *accord Gersman*, 975 F.2d at 900 (holding that the *Bowen* presumption applies to changes in substantive law while *Bradley* presumption applies to remedial, or procedural, provisions); *Mozee*, 963 F.2d at 935–36 (holding that *Bowen* states the general rule to which *Bradley* allows exceptions in narrow circumstances); *Jaekel*, 797 F.Supp. at 491 (*Bowen* and *Bradley* can be read together to mean that statutes are presumed prospective if they affect substantive rights and liabilities, but may be applied retroactively where no "manifest injustice" is wrought). *But cf.* Michele A. Estrin, Note, "Retroactive Application of the Civil Rights Act of 1991," 90 Mich.L.Rev. 2035, 2062 (1992) (noting that the "lack of content to the distinction" between substance and process leads to contradictory results in similar cases). In other words, we presume prospective application unless we have no reason to believe that applying a statute will unfairly infringe upon substantive rights and liabilities.

### C. Application of the *Bradley–Bowen* Standard

#### 1. In Search of a Bright Line

Few courts have dealt with the distinction—as it applies to the enhanced damages awards under the revised Act—between the retroactivity of laws regulating substantive rights and laws which affect procedures or damages. One court in this District has unequivocally held that the Act is to be applied to all cases after the Act's enactment. *See Great American Tool*, 780 F.Supp. at 1355. The Court there saw the issue of retroactivity as a rather simple one, observing that:

[b]ecause this case was not pending at the time the Act became law, *there is no issue of retroactive application.* Nor does it matter that the alleged wrongful conduct here occurred before the enact-

ment of the Act ... Indeed, section 402(a) of the Act states 'this Act and the amendments made by this Act shall *take effect* upon enactment.' The Act took effect on November 21, 1991 and, thus, it governs all actions filed after that date. *Id.* (emphases added).

Although we find merit in the concise analysis of the District Court in *Great American*, we do not believe it is dispositive. As we noted above, there are numerous interpretations of the words "take effect": an act could conceivably be meant to take effect only as to cases filed after its passage without also taking effect as to prior conduct. *See also Jaekel*, 797 F.Supp. at 489 (finding reliance on section 402 ultimately unsatisfying because the meaning of "effective date," without more, is inevitably ambiguous). Given the ambiguity that necessarily surrounds any attempt to determine the Act's effective date, many courts are tempted by the prospect of divining a bright-line rule to guide future decisions.

A few courts have drawn the bright-line of simply holding that the Act can never apply to pre-enactment conduct. *See, e.g., Mass*, 805 F.Supp. 1530; *Moore*, Civil Action No. 92–M–1264. One rationale for such a "time of conduct" rule incorporates by analogy the Ex Post Facto Clause, U.S. Const. art. I, § 9, which has generally been interpreted to prohibit criminal laws which "impos[e] a punishment for an act which was not punishable at the time it was committed; or impos[e] additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 963–64, 67 L.Ed.2d 17 (1981) (citations omitted). Although the Supreme Court has consistently maintained that the prohibition applies only to criminal laws, *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), we might add that whereas the Ex Post Facto Clause has been interpreted to prohibit retroactive, punitive restrictions

of personal liberty, section 102 of the Act implicates only increased monetary fines, and whereas the Clause aims to protect from lack of fair notice the liberty interests of individuals, Title VII targets artificial persons with fifteen or more employees. 42 U.S.C.A. § 2000e(b). However, even if we were to extend by analogy the ex post facto rationales into the civil arena, our analysis would not be finished, for even the ex post facto jurisprudence distinguishes between the fairness of applying procedural versus substantive changes. *Weaver*, 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12 (citing *Dobbert*, 432 U.S. at 293, 97 S.Ct. at 2298, and *Hopt v. Utah*, 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884)). Moreover, in addition to the prematurity of resolving the issue before us with a mere analogy to the prohibition on ex post facto laws, we foresee other problems in a "time of conduct" rule.

While there is a certain initial appeal to such a rule, the attractiveness of the rule lessens when we consider that it is difficult to pinpoint with any semblance of precision when a discriminatory decision not to hire or not to promote has been made. Much discrimination is simply prejudice by omission, and while the existence of an omission may be ascertainable, the time of its occurrence may not. A plaintiff may simply arrive at the courthouse door armed only with the knowledge that, at some point in time, he or she was not hired, or not promoted, and that racial animus motivated the decision.

Similarly, when the discriminatory conduct alleged by a plaintiff straddles the Act's passage, a "time of conduct" rule suffers from further lack of clarity. A court applying such a rule to a case involving both pre- and post-enactment conduct would find itself in the unenviable position of trying to choose among allowing no retroactivity for any of the claims, allowing retroactivity for all claims, or allowing compensatory and punitive damages for some of the claims and none for others, while a jury sits in on only part of the case. A bright-line rule based on conduct may not be so luminous after all. We hold that time of filing is the most workable rule of application, though we come to our conclusion following an intermediate, and we believe necessary, analysis of policy and fairness.

### 2. Fairness: Substance Versus Process

In *Bradley*, the Supreme Court outlined three factors relevant to a determination of manifest injustice: (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the nature of the impact of the change of law upon those rights. 416 U.S. at 719–21, 94 S.Ct. at 2020–21. In assessing the first factor, the nature and identity of the parties, we note that this is a private dispute that nevertheless clearly seeks to vindicate important public civil rights interests in discouraging, remedying, and ultimately eradicating employment discrimination. The second factor to consider is the nature of the parties' rights and liabilities. The more relevant focus is on the defendant, on whose behalf one might suggest possession of vested rights to a bench trial or to limitations on plaintiffs' remedies. For example, the District Court in *Thomas* stated that application of section 102 of the Act "would impinge upon the Defendant's right to a bench trial in Title VII cases." 791 F.Supp. at 476. We are unable to see any such right. That a plaintiff does not have a right to a jury trial does not, we should think, automatically translate into a defendant's vested "right to a bench trial." Whereas the right to a jury trial for actions involving damages at law is a right derived from constitutional mandate, there is no corresponding historical importance attached to any so-called "right to a bench trial." We also do not believe that defendants have a vested right in limiting the remedies recoverable by plaintiffs harmed by discrimination.

We now turn to the factor of greatest import, the nature of any change in the parties' rights and liabilities. The policy reason often given for prospective application of substantive rules is that it is "unfair to make persons accountable for acts that did not violate statutory laws when they were performed." *Mozee*, 963 F.2d at 939; *see also Bonjorno*, 494 U.S. at 855, 110 S.Ct. at 1586–87, (Scalia, J., concurring).

Similarly, Defendants cite *Bonjorno* for the proposition that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place ... It was recognized by the Greeks, by the Romans, by English Common Law, and by the Code Napoleon. It has long been a foundation of American law." 494 U.S. at 855–56, 110 S.Ct. at 1586–87 (citations omitted). The damages provisions in the Act require us to go to the very essence of the distinction between changes in mere procedure or damages and changes in substantive rights and liabilities.

We are persuaded that no person is liable under section 102 for any acts or conduct for which he or she was not already liable. The Act's damages amendments impose no accountability for any new acts or conduct. Persons not liable for discrimination prior to the Act's passage may still escape liability now. Persons liable before the Act are still liable. The existence of liability has not changed; the Act merely changed the *amount* of that liability. And in contrast to retroactively applying the Act to a case on appeal or remand, application of the Act at the original trial stage raises no concerns about the expense of conducting two proceedings, redoing procedures that had already taken place, requiring new trials and thus double expenses, or any other type of reassessment or relitigation which might cause "manifest injustice." *See Mozee*, 963 F.2d at 937–39 (noting that "one of the primary reasons that appellate courts should not apply newly enacted procedural and damage provisions does not apply when a trial court *begins* new proceedings").

We therefore find that the Act's addition of compensatory and punitive damages are more in the nature of changes in procedure or damages than substantive rights or liabilities.

Granted, the greater an award of damages for proscribed, unwanted conduct, the less likely that persons and entities will perform this unwanted conduct. Nonetheless, the traditional theory underlying at least compensatory damages is that they are meant to compensate parties for their losses. Because society's valuation of a victim's losses understandably changes over time, it does not seem unfair to force litigating parties to comply with regard to damages.

*Id.* (citations omitted).

We cannot agree that a provision-by-provision analysis of whether the Act's provisions affect substantive or procedural rights would be too burdensome to courts. *See, e.g., Scherzer*, 797 F.Supp. 914; *Crumley*, 797 F.Supp. 341. We do not believe this to be a persuasive argument because the number of new provisions on which a plaintiff could reasonably be expected to rely and which defendant could legitimately dispute is actually quite small.[5] For this Court to attempt to maintain neutrality by declining to address the issue at all would ironically be tantamount to deciding in all cases against application of the Act's provisions, a decidedly nonneutral result.

We also find unpersuasive the argument that retroactive application would be unfair to corporate defendants required to pay damages that were not calculated into their business decisions to terminate. *Crumley*, 797 F.Supp. 341, 350–51. We do not believe that a defendant's business miscalculation of how much it will owe for intentional discrimination justifies levying a lower penalty once the defendant has been found to have discriminated. While the *potential* for actual liability is something of which defendants should have notice, the

---

**5.** The additions to law brought about by the Civil Rights Act of 1991, Pub.L. 102–66, Nov. 21, 1991, address appropriations, revenue estimates, government employee rights, knowing and voluntary waivers of rights, expansion in the definition of the "making or enforcing" of contracts in 42 U.S.C.A. § 1981, exceptions in application for corporations in foreign countries under certain circumstances, attorneys' fees, time for filing charges and relief available, civil actions in federal employment, the definition of disparate impact, definitions of terms, and EEOC involvement in educational, promotional, and outreach activities. Few of these changes have been a source of struggle within the district courts over the fairness of their retroactive application; indeed, few even deal with pre-enactment *conduct* of defendants at all.

**578**

amount of damages for that liability is simply a risk of doing business. Like the amount a jury chooses to set in any verdict, the amount of damages that society sets by statute is a valuation that "understandably changes over time." *Mozee,* 963 F.2d at 939; *see also Hastings v. Earth Satellite Corp.,* 628 F.2d 85, 94 (D.C.Cir.1980). In addition, following a business projections standard, if a corporation were to pay smaller than expected damages because the amount of recoverable damages were by statute lowered, it would receive a windfall, and we do not believe a court following such an analysis could or would, simply to be consistent, distribute that "profit" to the plaintiff.

In short, we cannot agree that where a defendant is proven to have known at the time that its actions were illegal, it is manifestly unjust for a court or jury to assess an amount of compensation for a plaintiff's loss that society, through its medium of Congress, has deemed appropriate. Likewise, where a plaintiff has a right to damages at law, we believe there is no manifest injustice in providing that plaintiff with a trial to a jury, especially insofar as a jury trial is a purely procedural matter.

ACCORDINGLY, it is ordered that Defendant's Motion for Partial Summary Judgment, filed July 30, 1992, is DENIED.