**Percy Lavsor WILLIAMSON, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, a corporation, Defendant.**

**Civ. A. No. 92–F–1541.**

United States District Court, D. Colorado.

Dec. 15, 1992.

Percy Lavsor Williamson, pro se.

Mark C. Hansen, Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, CO, for defendant.

## ORDER REGARDING DISMISSAL OF CLAIM

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving allegations of racial discrimination in employment. This matter comes before the Court on Defendant's Motion to Dismiss 42 U.S.C. § 1981 Claim, filed October 13, 1992. Jurisdiction is based on 28 U.S.C.A. § 1343(3) & (4).

Plaintiff failed to respond to the motion. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

### I.

Prior to this action, Plaintiff, Percy Lavsor Williamson, was an employee of Defendant, the Union Pacific Railroad Company. Plaintiff brought this action against Defendant alleging, among other things, a violation of 42 U.S.C.A. § 1981 in the course of his employment.[1] Plaintiff, who is black, claims that Defendant retaliated against him, terminated him, and failed to reinstate him as a result of racial prejudice.[2]

Plaintiff claims that on February 28, 1989, he suffered injuries resulting from the negligence of an employee of Defendant. Plaintiff alleges he reported the injury to Defendant and complained about acts of discrimination by Defendant's employees. Plaintiff further alleges that Defendant subsequently retaliated against him for reporting his injury by conducting a disciplinary investigation that culminated in Plaintiff's termination. He asserts that the real reason Defendant fired him was for complaining about racial discrimination and because he is black. Further, Plaintiff states that Defendant refused to reinstate him in accordance with its usual practice for infractions of the kind attributed to Plaintiff, and that Defendant refused to rehire him only because he is black. Defendant moved to dismiss Plaintiff's section 1981 claims.

### II.

There are at least three acts of discrimination alleged by Plaintiff as falling under section 1981: discriminatory termination, retaliatory discharge for Plaintiff's attempts to assert his right not to be discriminated against, and discriminatory failure

---

**1.** All factual recitations in this Order have been alleged in the Complaint and in Defendant's Motion to Dismiss 42 U.S.C. § 1981 Claim.

**2.** In accordance with *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), Plaintiff's *pro se* complaint has been construed liberally.

to reinstate. We find that only the last can be brought under section 1981.

Section 1981 of Title 42 provides that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory *to make and enforce contracts* ... as is enjoyed by white citizens ..." (emphasis added). In 1989, the Supreme Court held·that § 1981 does not prohibit discriminatory conduct which occurs "after the contract relation has been established, including breach of the terms of the contract." *Patterson v. McLean Credit Union,* 491 U.S. 164, 171, 109 S.Ct. 2363, 2369, 105 L.Ed.2d 132 (1989). The Court of Appeals for the Tenth Circuit later interpreted *Patterson* to prohibit section 1981 claims for discriminatory discharge. *Trujillo v. Grand Junction Regional Center,* 928 F.2d 973, 975–76 (10th Cir.1991). Defendant asserts that Plaintiff's section 1981 claim is thus barred, inasmuch as it clearly relates to Defendant's alleged discriminatory termination of employment and its alleged discriminatory failure to reinstate Plaintiff afterwards.

### A. Discriminatory Failure to Reinstate

■ Initially, we disagree with Defendant that the decision in *Trujillo* so clearly voids Plaintiff's claim regarding Defendant's discriminatory failure to reinstate him in accordance with its usual practice. Indeed, a failure to reinstate, based solely on grounds of racial prejudice, would appear to be action of the kind prohibited by section 1981's guarantee of "the same right ... to make ... contracts." The Supreme Court in *Patterson* expressly allowed that "a refusal to enter into an employment contract on the basis of race" would be actionable under section 1981. *Patterson,* 491 U.S. at 182, 109 S.Ct. at 2375. In the

context of discriminatory nonpromotion claims, the Court also observed that whether such a claim is actionable depends upon whether the new position would have offered "an opportunity for a new and distinct relation between the employee and the employer ..." *Id.* at 185, 109 S.Ct. at 2377. We hold that neither *Patterson* nor *Trujillo* bar claims under section 1981 which allege that a Defendant has refused, on racial grounds, to honor its usual practice of reinstating, or reforming contracts with, terminated employees.

### B. Discriminatory Termination

■ Plaintiff's discriminatory termination claim, on the other hand, is clearly barred by *Trujillo. Id.* at 976. The sole question before us is whether the Civil Rights Act of 1991 ("the Act") can be applied effectively to overrule *Trujillo's* interpretation of *Patterson.* In section 101 of the Act, Congress added a subsection (b) to section 1981. The new section 1981(b) provides that claims under the statute shall cover "termination of contracts, and ... all benefits, privileges, terms and conditions of the contractual relationship." Defendant argues that section 101 is not applicable to this action because the Act as a whole does not apply to pre-enactment conduct.[3] This Court has recently held, however, that whether a particular section in the Act is applicable to pre-enactment conduct depends on the nature of the change in law effectuated by that section. *Bland v. Burlington Northern Railroad Co.,* 811 F.Supp. 571, Order Regarding Motion for Partial Summary Judgment (D.Colo. Nov. 18, 1992) (holding that in cases filed after Act's enactment, section 102 of the Act was applicable to pre-enactment conduct).

In *Bland,* we held that a statute is presumed to be prospective unless it does not

---

**3.** We note that Defendants have skipped lightly over the fact that *Patterson* was not in effect at the time of Defendant's alleged conduct, but we decline to create a standard under which courts must embark on a searching inquiry to establish both the common law in effect at the time of the alleged discriminatory conduct and the parties' understanding of that law. "Any other holding would require unwieldy distinctions between classes of litigants based on the degree to which

they relied on the legal regime antedating the Civil Rights Act of 1991." *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1374 (5th·Cir.1992) (holding that the rule announced in *Patterson* applied retroactively to defendant's conduct in 1974); *see also Gersman v. Group Health Association, Inc.,* 975 F.2d 886, 899 (D.C.Cir.1992) (holding that fact that conduct occurred prior to *Patterson* is of no legal effect).

unfairly infringe upon the substantive rights and liabilities of those affected by it. *Id.* at 574–75. We found that section 102 of the Act, which provides for compensatory and punitive damages, did not alter or infringe upon any substantive rights and was therefore applicable, for cases filed after enactment only, to pre-enactment conduct. We observed that under section 102 of the Act, no one was liable for any acts or conduct for which he or she was not already liable, and that the Act's damages amendments imposed no accountability for any new acts or conduct.

We are now asked to decide whether section 101's extension of section 1981(b) to "all benefits, privileges, terms and conditions of the contractual relationship" imposes liability for conduct for which Defendant was not previously liable. It is clear that prior to the enactment of the Act, *Patterson* exempted Defendant from liability under section 1981 for discriminatory termination. It is equally clear that Defendant would now be liable—or Plaintiff at a minimum *seeks* liability—for such discrimination under the amended section 1981(b). We hold that section 101 of the Act therefore does or would impose upon Defendant a new, substantive liability that it did not have prior to the Act, and that application of it to pre-enactment conduct therefore would be unfair. *See also Moore v. Hughes Aircraft Company, Inc.,* Civil Action No. 92–M–1264, Memorandum Opinion and Order (D.Colo. Aug. 5, 1992).

### C. Discriminatory Retaliation

■ Plaintiff's claim for discriminatory termination can also be read as a claim alleging retaliation (the termination) in response to Plaintiff's exercise of his rights to challenge discrimination. The law on the issue is arguably less than clear in this District. In *Jordan v. U.S. West Direct Co.,* 716 F.Supp. 1366, 1368 (D.Colo.1989) (Carrigan, J.), the District Court noted that "[t]he *right to enforce contracts* extends to private efforts to obstruct nonjudicial methods of adjudicating disputes involving discrimination." The Court found actionable under section 1981 the plaintiff's claim that he was retaliated against for complain-

ing of discrimination and instigating an investigation regarding his charges. *Id.* In a later decision, the same court held that retaliation against a plaintiff for his support of *another employee's* civil rights action was *not* actionable under section 1981 because the plaintiff's claim related to "conduct affecting the terms and conditions of his employment, not ... its formation or enforcement." *Riel v. Reed,* 760 F.Supp. 852, 854 (D.Colo.1991) (Carrigan, J.). Furthermore, while the holding in *Jordan* seems consistent with *Patterson's* clear preservation of section 1981's applicability to private contracts, 491 U.S. at 171, 109 S.Ct. at 2369 (declining to overrule precedent establishing the applicability of section 1981 to private contracts), it may not be consistent with *Patterson's* "pinched reading" of the phrase "same right to make a contract." *Id.* at 189, 109 S.Ct. at 2379 (Brennan, J., concurring in the judgment and dissenting in part).

And although *Jordan's* interpretation of *Patterson* was implicitly accepted by the Tenth Circuit in *Jackson v. City of Albuquerque,* 890 F.2d 225, 236 n. 15 (10th Cir.1989) (dismissing defendants' assertion that the recent holding in *Patterson* negated the plaintiff's retaliatory termination claim), the Tenth Circuit has also affirmed a recent decision in this District dismissing a section 1981 claim of retaliation in response to a plaintiff's complaints of discrimination: *Harris v. Presbyterian/Saint Luke's Medical Center,* 758 F.Supp. 636 (D.Colo.1991), *aff'd* 947 F.2d 953 (10th Cir.1991). Moreover, the Tenth Circuit appears to view itself as bound to follow closely the "pinched reading" of *Patterson.* By holding claims of discriminatory termination not actionable under section 1981, the *Trujillo* Court implicitly rejected the argument that to do so would "render the promise of the statute ephemeral" and render "illusory" the right to make contracts "if, by an arcane and semantic distinction, an employer is required to respect a prospective employee's right to make contracts, yet is permitted to terminate a contract a few moments after the contract has been in existence." *Gin-*

*wright v. Unified School District No. 457,* 756 F.Supp. 1458, 1472 (D.Kan.1991).

In the context of retaliation for the enforcement of contract rights, arguments similar to *Ginwright* apply and must similarly fail. In *Hill v. Goodyear Tire & Rubber, Inc.,* 918 F.2d 877, 880 (10th Cir. 1990), the Court of Appeals denied a section 1981 claim alleging retaliation for advocacy of civil rights causes on the fine distinction that such advocacy was not specifically protected under section 1981. The Court expressly reserved the question of whether the plaintiff could have stated a claim if he were "discharged in retaliation for advocating changes in conduct actionable under section 1981, e.g., discriminatory hiring practices." *Id.* n. 3. Presumably, retaliation against an employee for *enforcing* changes in conduct actionable under section 1981, that is, enforcing employer adherence to his or her identifiable contract rights, is likewise actionable. However, at least a few courts have merely stated, for example, that retaliation "very well may impair the employee's ability to enforce her contract rights," and have found a cause of action under section 1981 without going on to identify those contract rights. *Hicks v. Brown Group, Inc.,* 902 F.2d 630, 638 n. 20 (8th Cir.1990); *see also Coleman v. Dow Chemical Co.,* 747 F.Supp. 146, 152 (D.Conn.1990). *Contra Kozam v. Emerson Electric Co.,* 739 F.Supp. 307, 313 (N.D.Miss.1990) (noting that "[t]his court is aware of no claim ... that the termination breached *any term of plaintiff's contract* of employment") (emphasis added).

After *Patterson, Trujillo,* and *Hill,* the issue appears to have been narrowed such that it is not whether Plaintiff attempted to enforce a *generalized* right not to be discriminated against in his employment, a right which *Patterson* has denied, but whether Plaintiff attempted to enforce a *contractual right.* Because Plaintiff has made no allegation that his employment contract prohibited discrimination against him during his employment, he cannot be said to have attempted to enforce a right under contract. The Supreme Court and Tenth Circuit's limiting interpretations of section 1981 therefore preclude Plaintiff's retaliatory termination claim because it implicates no discrimination in the making or enforcing of a contract.

## III.

Accordingly, Defendant's Motion to Dismiss 42 U.S.C. § 1981 Claim, filed October 13, 1992, is GRANTED IN PART and DENIED IN PART. Plaintiff's discriminatory termination and discriminatory retaliation claims are DISMISSED. Plaintiff's section 1981 claim is preserved only on the grounds of discriminatory failure to reinstate.